UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Chantal Hilton,<br><br>        Plaintiff,<br><br>v.<br><br>Trident Technical College and Veronica Polite,<br><br>        Defendants. | C/A No. 2:24-cv-07719-RMG-MHC<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff originally filed this employment discrimination action in state court. ECF No. 1-1. Defendant Trident Technical College ("Trident") removed it to this Court on December 31, 2024, ECF No. 1, and Defendant Veronica Polite ("Polite") subsequently joined in the removal, ECF No. 9.

Presently before the Court for disposition are two Motions to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) a Motion for Partial Dismissal filed by Defendant Trident, ECF No. 3 ("Trident's Motion"); and (2) a Motion filed by Defendant Polite, ECF No. 11 ("Polite's Motion"). Plaintiff filed Responses in Opposition to the Motions, ECF Nos. 6, 12, and Defendants filed Replies, ECF Nos. 7, 14. The Motions are ripe for review.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. As these Motions are dispositive, this Report and Recommendation is entered for review by the District Judge. For the reasons that follow, the undersigned recommends that both Motions be granted.

## **LEGAL STANDARD**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, the court is required to evaluate the complaint in its entirety, accept the factual allegations in the pleading as true, and draw all reasonable factual inferences in favor of the party opposing the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440, 448 (4th Cir. 2011). "A complaint should not be dismissed as long as it provides sufficient detail about the claim to show that the plaintiff has a more-than-conceivable chance of success on the merits." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks omitted).

## **DISCUSSION**

In her Complaint, Plaintiff alleges that she managed a Call Center at Trident, where she supervised part-time employee Polite. ECF No. 1. She alleges that Polite's conduct toward Plaintiff constituted bullying and created a hostile work environment, and she asserts that Trident retaliated against Plaintiff after she complained of race discrimination and bullying, ultimately resulting in her constructive discharge. *Id.*

Plaintiff asserts six causes of action: (1) a claim against Trident for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981; (2) a claim against Trident for retaliation in violation of Title VII and 42 U.S.C. § 1981; (3) a claim against Trident for hostile work environment in violation of Title VII and 42 U.S.C. § 1981; (4) a claim against Polite for tortious interference with a contract; (5) a claim against Trident for negligent supervision of an employee; and (6) a claim against Polite for intentional infliction of emotional distress. ECF No. 1-1 at 16–24.

**I.   Trident's Partial Motion to Dismiss, ECF No. 3**

Trident moves for partial dismissal of Plaintiff's Complaint, seeking dismissal of Plaintiff's claims made under 42 U.S.C. § 1981, as well as her claim of negligent supervision. ECF No. 3. Trident does not seek dismissal of the claims brought under Title VII. *See id.*

**A.   The § 1981 Claims Should Be Dismissed.**

Trident argues that Plaintiff's claims made under 42 U.S.C. § 1981 must be dismissed because Trident, as a state entity, is immune from suit on these claims. ECF No. 3 at 1; ECF No. 3-1 at 3 (citing *Alsharif v. Med. Univ. of S.C.*, No. 2:14-cv-4438-SB, 2016 WL 270913, at *2 (D.S.C. Jan. 22, 2016) ("Fourth Circuit cases and cases from district courts within the Fourth Circuit . . . all hold that section 1981 claims cannot be pursued against state agencies); *Chambers*

*v. Med. Univ. Hosp. Auth.*, No. 2:11-cv-0261-RMG, 2011 WL 2559605, at *2 (D.S.C. June 28, 2011) ("Defendant is entitled to dismissal of any claims being asserted under 42 U.S.C. § 1981, since, as a matter of law, there is no private right of action under the statute against public defendants."); S.C. Code Ann. 59-53-460 *et. seq.* (the "Trident Technical College Enterprise Campus Authority Act")).

In her Response, Plaintiff consents to the dismissal of her § 1981 race discrimination claim, and she does not make any arguments in support of her other § 1981 claims or otherwise dispute that Trident is a state entity. ECF No. 6 at 1. Because Defendant is a state entity and there is no private right of action under 42 U.S.C. § 1981 against public defendants, the undersigned recommends that Plaintiff's claims brought under 42 U.S.C. § 1981 be dismissed with prejudice. *See Chambers*, 2011 WL 2559605, at *2.

**B.  The Negligent Supervision Claim Should Be Dismissed.**

Trident moves for dismissal of Plaintiff's negligent supervision claim on the basis that the claim is barred by the exclusivity provision of the South Carolina Workers' Compensation Act, S.C. Code Ann. § 42-1-540 (the "Act"), and does not fall within any of the Act's exceptions. ECF No. 3-1 at 4–6. In Response, Plaintiff does not address Trident's arguments regarding the Act's exclusivity provision. ECF No. 6 at 3–5. Rather, she argues that once she put Trident on notice of Defendant Polite's conduct, Trident owed her a duty of care to protect her from tortious interference of a contract and intentional infliction of emotional distress. *Id.* at 4. She further argues that Trident breached this duty when it failed to protect Plaintiff from Polite's intentional acts. *Id.* at 5. Upon review, the undersigned is constrained to agree with Trident.

The Act provides that "[e]very employer and employee . . . shall be presumed to have accepted the provisions of the [Act] respectively to pay and accept compensation for personal

injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code Ann. § 42-1-310. A "personal injury" is "an injury by accident arising out of and in the course of employment." S.C. Code Ann. § 42-1-160(A). The Act applies to public entities of South Carolina and their employees. S.C. Code Ann. § 42-1-320.

South Carolina courts have found that workplace harassment and intentional torts by co-employees (such as outrage) can constitute personal injuries within the scope of the Act. *See Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 702 (S.C. 1993) (finding that alleged workplace harassment constituted "unusual and extraordinary" conditions of employment for purposes of determining whether the harassment was an "accident" under the Act, reasoning that plaintiff "could not have anticipated Co–Employee's egregious conduct at the time of her employment" and that although "the conduct persisted through an extended period, it was at no time an ordinary incident of employment"); *Loges v. Mack Trucks*, 417 S.E.2d 538, 539–41 (S.C. 1992) (holding that allegations of intentional infliction of emotional distress, assault, and battery arising out of workplace harassment constituted personal injuries within the scope of the Act).

The Act's exclusivity provision states, in relevant part, the following:

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee . . . as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540.

Based on this provision, South Carolina courts hold that the Act provides the exclusive remedy against an employer for an employee who sustains injuries arising out of his employment. *Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002). Indeed, the Supreme Court of South Carolina has explained that the only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer;

5

(2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 n.2 (S.C. 2002); *see Kerr v. Hammond School*, No. 3:17-3109-JFA-KFM, 2018 WL 3132409, at *2 (D.S.C. Feb. 22, 2018). Under South Carolina law, "only 'dominant corporate owners and officers' may constitute alter egos," not "supervisory employees." *See Dickert*, 428 S.E.2d at 701 (quoting 2A Larson, *Workmen's Compensation*, §§ 68.21 and 68.22).

Both federal and state courts in South Carolina have held that state law claims for negligence, including claims for negligent supervision, retention, and hiring, are preempted by the Act. *See, e.g.*, *Alexander v. S.C. Dep't of Transp.*, No. CV 3:20-4480-TLW-SVH, 2021 WL 5167807, at *8–9 (D.S.C. Aug. 23, 2021) (finding that plaintiff's claim that his employer "ha[d] a duty that it breached to protect Plaintiff from a hostile work environment and retaliation" was a negligence claim that was barred by the exclusivity provision of the Act), *report and recommendation adopted sub nom. Alexander v. SC Dep't of Transportation*, No. 3:20-CV-4480-TLW, 2021 WL 5166400 (D.S.C. Nov. 4, 2021); *Lugo v. Boeing Co.*, No. 2:19-CV-2995-RMG, 2020 WL 495336, at *4 (D.S.C. Jan. 30, 2020) ("Because Plaintiff's negligent supervision claim clearly arises out of and in the course of his employment with Defendant, and as both federal and state courts in South Carolina have held the Act preempts negligent hiring and supervision claims, Plaintiff's negligent supervision claim is dismissed." (internal quotation marks omitted)); *Williams v. Windstream Servs., LLC*, No. 618CV03049DCCJDA, 2019 WL 3066653, at *6 (D.S.C. Feb. 12, 2019) (finding that "Plaintiff's negligence claim seeking to recover for Defendant's alleged failure to intervene in and investigate his harassment claims is . . . barred" pursuant to the Act's exclusivity provision and should be dismissed on that basis); *Sabb*, 567 S.E.2d at 234 (finding that

the Act provides the exclusive remedy for employee's claims of negligent supervision and negligent retention arising out of and in the course of her employment); *Dickert*, 428 S.E.2d at 701 (holding that the Act provides the exclusive remedy for work-related injuries, and that claims for negligence, including hiring, retention and supervision, as well as emotional distress, are covered by the Act).

Here, Plaintiff alleges that Trident is liable for the negligent supervision of Polite, a part-time Trident employee and Plaintiff's subordinate. ECF No. 1-1 at ¶¶ 34, 154. Plaintiff does not argue that any of the Act's exceptions to the exclusivity provision applies, and the facts do not support application of any of the exceptions. *See Cason*, 560 S.E.2d at 893 n.2; *Dickert*, 428 S.E.2d at 701 (explaining that only dominant corporate owners and officers may constitute alter egos); S.C. Code Ann. § 42-1-360 (excluding certain occupations). Accordingly, the undersigned concludes that Plaintiff's cause of action against Trident for negligent supervision should be dismissed with prejudice. *See Bender v. Epting Distributors, Inc.*, No. 3:24-CV-4344-JFA, 2024 WL 5244432, at *4–5, 8 (D.S.C. Dec. 30, 2024) (dismissing, with prejudice, negligent supervision claim upon finding the claim to be barred by the Act's exclusivity provision).

**II.     Polite's Motion to Dismiss, ECF No. 11**

Polite moves for dismissal of both claims made against her for failure to set forth sufficient factual allegations to state a claim. ECF No. 11. The factual allegations in the Amended Complaint related to Polite are as follows.

Plaintiff was hired by Trident in September 2022 as a Call Center Manager/Communication Specialist III Information Specialist. ECF No. 1-1 at ¶ 27. In that position, Plaintiff supervised employees and "was required to direct employees and counsel them regarding their actions, performance and behavior." *Id.* at ¶ 29.

7

Plaintiff supervised Polite, who is African American, and attempted to counsel Polite "regarding her tardiness, disruptions creating a hostile work environment and her threatening the Plaintiff." *Id.* Polite told Plaintiff that Plaintiff would lose her job because Polite was untouchable because of her friendships with Trident employees and her brother's political affiliations with the college. *Id.* at ¶ 30. Plaintiff requested that Polite arrive at work on time and perform all aspects of her positions, but "Polite refused and would go to the Plaintiff's supervisor [Kathleen] Roukous to request special accommodation regarding performance of her position and tardiness." *Id.* at ¶ 31. "Polite specifically informed the Plaintiff on several occasions that because of her power and authority with people of color there was nothing that the Plaintiff could do to her because she would always be treated more favorably because of her race." *Id.* at ¶ 32.

On June 6, 2024, after being threatened by Polite, Plaintiff decided that she needed to file the following formal bullying complaint:

> Unfortunately, I am seeking immediate intervention from being "bullied" by a part-time staff member Veronica Polite which continues to threaten my employment status.
>
> I am being forced to consulting an attorney while this person has made it abundantly clear she's very close to Devetta Hughes, Kim Greene, and has a brother Wendall Gillard who is a House of Representatives Officer, and she would get me fired.
>
> Does Title IX cover this type of harassment and bullying?
>
> Veronica has created a hostile work environment for me and other staff, she refuses to accept responsibility but would prefer to threaten my livelihood.
>
> As call center manager just today, I made a concerted effort to address her habitual tardiness (which she denies), instead she would have me fabricate her timesheet, her public hostile outbursts towards me in front of witnesses must discontinue, and once again I was verbally attacked and threatened to lose my job.
>
> I am unable to perform the duties I have been hired to perform without her manipulating the system and having others empower her to continue this toxic pattern.

> I am unable to report directly to the Human Resources Director as she has repeatedly projected, "No one goes against her as she has clout with people who will protect her from losing her job."
>
> I am unable to report directly to my director Kathleen Roukous as I am unsure how much control Veronica has over her, I have witnessed many times Kathleen has permitted her to break the rules of Trident Technical College, and all has to turn the other cheek.
>
> I am alone in this battle; I have reported to Kathleen how hostile Veronica can be and vocalized her threats towards my employment status and Kathleen ignores it.

*Id.* at ¶¶ 33–34.

Plaintiff was contacted by the Assistant Vice President, the Vice President for Student Engagement and Success, and others regarding her complaint. *Id.* at ¶¶ 35–39. On June 10, 2024, Plaintiff sent the following email regarding her complaint:

> I would like to know in moving forward since I have had the fear of God placed on me, if I am at liberty to report directly to the individuals in this email, as some of what will be reported was directives from my immediate supervisor and unsure of the ramifications. I would like very much to talk freely of these events and what has been done illegally but I am a bit intimidated, and fear being triangulated.
>
> To be precise Kathleen overrides my authority to provide Veronica Polite privileges to telecommute at her discretion and would have me not put that on Veronica's timesheet, which enables Veronica to create such a hostile work environment for myself and other fulltime staff. I would not be surprised if Veronica's current timesheet has been submitted to HR without my signature because this is what directly influenced my initiating these procedures.
>
> As I indicated to Evan Reich last Friday, I made every effort to resolve Veronica's habitual tardiness, her not adhering to the contract, addressing her public humiliations in front of other staff which in turn creates a hostile work environment, and it must be corrected at which time she once again threatened my employment and demanded a meeting with Kathleen.
>
> As I told Veronica on last Wednesday there's been two witnesses to her hostile displays, she reiterates "Bring it on," so in conclusion I felt this needed to be reported to other officials as meeting with Kathleen would only hinder resolution.

*Id.* at ¶ 42. In response to this email, the Associate Vice President for Human Resources informed Plaintiff that Polite would not be on the unit until the issues were sorted out. *Id.* at ¶ 43.

9

On June 12, 2024, Plaintiff met with a number of Trident officials regarding her complaint. *Id.* at ¶ 45. "During the meeting the Plaintiff addressed the issues of Veronica Polite exploiting other staff by taking [Trident] property, using other staff during company time to achieve her brother's political projects specifically 'Project Cool Breeze,' [and Trident] overlooking [that] this hostile employee had her brother Wendell Gilliard speak to the Pres[id]ent of the College, Thornley[,] to have her reinstated." *Id.*

On June 25, 2024, Plaintiff met with EEOC/Affirmative Action Coordinator/Human Resources Director Devetta Hughes, who warned Plaintiff to be careful what she said in emails and who she copied because Polite could sue Plaintiff for defamation. *Id.* at ¶ 54. Hughes informed Plaintiff that she needed to stop being a "scaredy cat." *Id.* As Plaintiff had heard this statement before from Polite, Plaintiff took Hughes's actions as proof "that she was in a conspiracy with Polite to subject the Plaintiff to a hostile work environment in retaliation for her complaints." *Id.*

On June 27, 2024, Plaintiff was mandated to attend a meeting with Polite and a number of Trident officials, wherein Plaintiff was informed that she was being demoted. *Id.* at ¶ 55.

On June 28, 2024, Plaintiff submitted a complaint of discrimination based on race and retaliation. *Id.* at ¶ 56.

On July 1, 2024, Plaintiff "submitted a constructive discharge termination notice to [Trident,] setting forth the reason for her resignation was the hostile work environment, discrimination and retaliation." *Id.* at ¶ 59.

### A. The Claim for Intentional Infliction of Emotional Distress Should Be Dismissed.

Polite argues that Plaintiff's claim for intentional infliction of emotional distress (IIED) should be dismissed because it fails to allege sufficient facts to state a plausible claim. The undersigned agrees.

10

To state a claim for IIED, a plaintiff must allege facts showing the following elements: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from defendant's conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) defendant's actions caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it. *See Argoe v. Three Rivers Behavioral Ctr. & Psychiatric Solutions*, 697 S.E.2d 551, 555 (S.C. 2010); *Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 70 (S.C. 2007); *see Park v. Se. Serv. Corp.*, 771 F. Supp. 2d 588, 591–92 (D.S.C. 2011). The court plays a significant gatekeeping role in order "to prevent claims for intentional infliction of emotional distress from becoming a panacea for wounded feelings rather than reprehensible conduct." *Hansson*, 650 S.E.2d at 72 (internal quotation marks omitted). Thus, the "question of whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to allow recovery is a question for the court to determine in the first instance." *Wright v. Sparrow*, 381 S.E.2d 503, 506 (S.C. Ct. App. 1989).

> The Second Restatement on Torts provides the following regarding the tort of IIED:
>
> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Davis v. Gestamp S.C. LLC*, No. 7:23-CV-967-TMC, 2024 WL 3596864, at *7 (D.S.C. Mar. 26, 2024) (quoting Restatement (Second) of Torts § 46, Comment d (1965)). South Carolina courts

have favorably quoted this language and their decisions highlight the difficulty in establishing the "extreme and outrageous conduct" requirement of this tort. *Id.* (collecting cases); *see, e.g.*, *Corder v. Champion Road Machinery Intern. Corp.*, 324 S.E.2d 79, 81–82 (S.C. Ct. App. 1984) (quoting the aforementioned language from the Restatement and stating that, "[w]hile wrongful discharge for any reason is reprehensible conduct and may cause mental anguish to the discharged employee, it is not in itself the kind of extreme conduct which gives rise to a legal claim for outrage").

Although Plaintiff alleges that Polite flaunted her political connections and race, went over Plaintiff's head, unfairly utilized staff members on her brother's service projects, made unspecified false statements against Plaintiff, or otherwise bullied, harassed, or threatened Plaintiff's job, the allegations in the Complaint do not set forth any facts detailing, or even suggesting, the type of extreme and outrageous conduct required to establish an IIED claim. *See, e.g.*, *Smith v. Sam Carbis Sols. Grp., LLC*, No. 416CV02320RBHTER, 2017 WL 874983, *3 (D.S.C. Mar. 6, 2017) (granting motion to dismiss IIED claim upon finding the plaintiff's general allegations that the chief operating officer and human resources representative verbally abused, harassed, and intimidated her insufficient to state a plausible claim that the "conduct was so extreme and outrageous so as to exceed all possible bounds of decency' such that it 'must be regarded as atrocious, and utterly intolerable in a civilized community'"); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 856–57 (D.S.C. 2015) (granting motion to dismiss upon finding that defendant's alleged conduct—laughing at and denying Plaintiff's request for an accommodation, insulting Plaintiff with a racial slur, speaking to Plaintiff in an aggressive tone, and threatening to call the police on Plaintiff—did "not rise to the level of extreme and outrageous conduct necessary to state a claim for IIED"); *Moore v. Rural Health Servs., Inc.*, No. CIV.A.1:04 376 RBH, 2007 WL 666796, at *17 (D.S.C. Feb. 27, 2007) (finding that where defendant board members came to

12

Plaintiff's workplace, called him a "racist" and threatened to fire him from the board, called a sheriff's deputy to have him escorted off the property, shouted that he was a thief, and gave a newspaper reporter material from Plaintiff's personnel file, such conduct was not sufficient "to meet the high standard for establishing Plaintiff's outrage claim under South Carolina law"); *Shipman v. Glenn*, 443 S.E.2d 921, 922 (S.C. Ct. App. 1994) (determining that, while the plaintiff's supervisor's conduct was "callous and offensive" when he ridiculed the plaintiff for her speech impediment and "verbally abused" and "threatened" her, this conduct could not form the basis of an intentional infliction of emotional distress claim). Accordingly, the undersigned recommends that the IIED claim be dismissed without prejudice.[1]

### B. The Tortious Interference Claim Should Be Dismissed.

Polite moves for dismissal of Plaintiff's claim for tortious interference with a contract because her factual allegations are not sufficient to allege that Polite was a third party, as is required to state a claim for tortious interference under South Carolina law. ECF No. 11-1 at 7–9.

The elements of a cause of action for tortious interference with a contract are as follows: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Hall v. UBS Fin. Servs. Inc.*, 866 S.E.2d 337, 344 (S.C. 2021) (quoting *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 642 S.E.2d 726, 731 (2007)). South Carolina jurisprudence recognizes that a plaintiff may have a claim for tortious interference with an at-will employment contract, even absent an underlying breach by the

---

[1] Although Polite seeks dismissal with prejudice, ECF No. 9 at 9, Plaintiff states an intention to amend her Complaint if the claims against Polite are dismissed, ECF No. 12 at 13. Because Plaintiff has not yet moved to amend or otherwise amended her Complaint and because the undersigned recommends dismissal for failure to allege sufficient facts to state a claim, which theoretically could be cured via amendment, the undersigned recommends dismissal without prejudice. *See Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) ("It is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a).").

terminating employer. *Id.* at 345 ("[W]e hold the absence of an underlying breach by the terminating employer does not shield the third party from liability when she intentionally and unjustifiably procures the termination of an at-will employee.").

"A claim for tortious interference with contract against co-employees requires the individual co-employees to have been acting outside of their employment and not as agents of the Corporate Defendants." *Barrett v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc. Parallon*, No. 423CV02658RBHTER, 2024 WL 1191109, at *6 (D.S.C. Mar. 20, 2024). This is because "tortious interference with contractual relations lies only against a third party, not a party to the contract." *Hall*, 866 S.E.2d at 345 (citing *Ross v. Life Ins. Co. of Va.*, 259 S.E.2d 814, 815 (S.C. 1979); *Threlkeld v. Christoph*, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984)). South Carolina courts have explained that "a corporate employer is a party to the contract of its employee, and an officer or agent of the corporation acting for or on behalf of the corporation is not a third party either." *Barrett*, 2024 WL 1191109, at *6 (quoting *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 607 (S.C. Ct. App. 1984) (holding endorsed by *Hall*, 866 S.E.2d at 345)). If a co-employee qualifies as a third-party employee, then "the threshold viability of the claim depends upon whether the third-party employee, without justification, made a report to the employer which induced the employer to terminate the at-will employee." *See Hall*, 866 S.E.2d at 343.

In her claim for tortious interference, Plaintiff alleges that Polite "was aware of the Plaintiff's [at-will] contract for employment and intentionally interfered with that contract by providing false information, intimidation, harassment, bullying, and hostile work environment." ECF No. 1-1 at ¶ 142. Plaintiff also alleges that Polite "purposely published false statements regarding the Plaintiff," "intentionally bullied the Plaintiff and her Staff, [and f]alsely reported information to Defendant [Trident] to interfere with the Plaintiff's employment and facilitate h[er]

termination so that Polite would not suffer consequences for her abhorrent behavior." *Id.* at ¶ 143. Plaintiff does not identify any specific false statements, and she alleges, in conclusory fashion, that she "was terminated from her employment as a result of the interference from Polite," who "went out of her way to ruin the Plaintiff's employment in order to create an escape goat for her own shortfalls." *Id.* at ¶¶ 145, 147. Plaintiff also alleges that "the sole purpose of Polite was to harm the Plaintiff in reputation for her reports regarding Polite's failures, violations of the law and policy." *Id.* at ¶ 149.

Viewing Plaintiff's factual allegations and all reasonable inferences therefrom in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has not alleged sufficient facts to state a claim against Polite for tortious interference. Plaintiff's Complaint does not include any allegations that Polite acted outside the scope of her employment with Trident Tech or that she acted for an independent purpose wholly disconnected from Trident Tech's business when she interacted with Plaintiff. *See Barrett*, 2024 WL 1191109, at *6 (dismissing tortious interference claim upon finding that the plaintiff "failed to allege that the actions of the individual defendants were conducted 'for some independent purpose of [their] own, wholly disconnected with the furtherance of [the Corporate Defendants'] business'" (quoting *Crittenden v. Thompson-Walker Co., Inc.*, 341 S.E.2d 385, 387 (S.C. Ct. App. 1986))).

To the contrary, all of Polite's alleged conduct—tardiness, creating unspecified "disruptions" or "public hostile outbursts" in front of other employees, going over Plaintiff's head to higher-level supervisors when workplace disputes arose between them, "exploit[ing]" other staff members by "taking [Trident] property" and using staff members to assist with her brother's political project during work hours, making unspecified "threats," providing unspecified "false information" to the College, and refusing to accept discipline from Plaintiff for performance issues

15

because she was African American and believed she would receive preferential treatment by Trident—took place in the context of her employment with Trident. Moreover, the Complaint does not allege facts from which it can be reasonably inferred that Polite, "without justification, made a report to the employer which induced the employer to terminate the at-will employee." *See Hall*, 866 S.E.2d at 343. Thus, the factual allegations in the Complaint are not sufficient to permit a reasonable inference that Polite was a third party who interfered with Plaintiff's contract. *See Barrett*, 2024 WL 1191109, at *6; *Hall*, 866 S.E.2d at 345. Accordingly, the undersigned recommends that the tortious interference claim be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Trident's Partial Motion to Dismiss (ECF No. 3) be **GRANTED** and that the claims for § 1981 race discrimination, § 1981 retaliation, § 1981 hostile work environment, and negligent supervision be DISMISSED with prejudice. It is further **RECOMMENDED** that Polite's Motion to Dismiss (ECF No. 11) be **GRANTED** and that the IIED claim and the tortious interference claim be DISMISSED without prejudice.

**IT IS SO RECOMMENDED.**

The parties are referred to the Notice Page attached hereto.

March 7, 2025  
Charleston, South Carolina

Molly H. Cherry  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).